**BLOCH et al. v. F. C. KUHNLE CO.**

**No. 4297.**

Circuit Court of Appeals, Seventh Circuit.

June 16, 1930.

John B. Hull, of Cleveland, Ohio, for appellants.

Winfield S. Williams, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This suit charges infringement of patent No. 1,332,793, granted to Leon Bloch March 2, 1920, for a combined waste and overflow. Appellant the Republic Brass Company is exclusive licensee under the above patent. The answers set up noninvention and non-

infringement. Upon trial the District Court entered a decree, without written opinion, dismissing the bill for want of equity. The errors relied on arise from the failure of the trial court to find the claims in suit valid and infringed.

The device of the patent, while described in the specification as applicable to tubs or basins, has found its chief utility in connection with what are known to the trade as "built-in" bathtubs, wherein the pipes for supplying water to the tubs and the waste and overflow connections are located below a flange on the top of the tub and between the wall of the room and the wall of the tub below the flange. The exposed side and end or ends of these tubs are each provided with an ornamental apron extending to the floor, this apron being missing from the wall or walls which fit against one or more walls of the room, the tub resting directly on the floor and not being supported by legs.

Appellants' device is shown below. Fig. 1 is a vertical section through the combined waste and overflow showing the valve open; Fig. 2 is a horizontal section through the valve. Fig. 3 is a front view of the locking lever.

In the embodiment of the invention a T-shaped valve chamber 10 is provided, the branch 11 of which communicates with the ordinary waste pipe leading from the bottom of the tub, the valve chamber being provided with a tapered seat 12 immediately below connection 11 and with a waste outlet through and below such seat. Connected with the upper portion of the T is an overflow pipe 13, to the upper end of which is secured an elbow 14. A flange at the horizontal end of the elbow bears against the wall of the bathtub, surrounding the opening 15 therein; and bearing against the opposite face of the bathtub wall is an escutcheon 16 having discharge opening 17 therein, the escutcheon and elbow being secured together by means of a rod 18 having one end threaded into a boss 19 in the elbow, the escutcheon being threaded onto said rod, which projects beyond the escutcheon.

A cylindrical valve 21 is mounted so as to slide vertically within the lower end of the tube 13, the lower end of the valve being beveled as shown at 22, to co-operate with the valve seat 12 and close the waste from the tub, when the valve is lowered. In order to facilitate the lowering movement of the valve, it is provided with an internal weight 23 which is similar in shape to the external portion of the valve, and the entire valve may be supported above its seat by a bail 25 which is pivotally connected to a flexible wire 26, the upper end of which is pivotally connected at 27 to the outer end of a rocking lever 28, which is pivoted to ears 29 carried by the escutcheon. The inner end of the short arm 30 of this lever is provided with an operating member comprising a central hub which is mounted on such end and with a handle portion 32 extending downwardly from the central hub and a cam portion or head 33 which extends upwardly from the hub and which has a central recess 35 adapted to engage the inner end of the rod 18.

By disengaging the head 33 from the rod 20, the valve 21 may be lowered so as to close the waste connection 11 and prevent the outflow of water from the bottom of the tub. On the other hand, by depressing the inner arm 30 of the lever, the valve may be raised to the position shown in Fig. 1 of the drawing, and may be retained in such position by swinging the head 34 beneath the inner end 20 of the rod 18.

The valve 21 is relatively short in length and is proportioned with such regard to the elbow connection 14 that when the escutcheon 16 is detached and the rod 18 disconnected from the elbow, the entire valve and its lifting mechanism can be entirely withdrawn. It prevents the necessity of having to dismantle the hidden elements of the fixture, while greatly facilitating the operation of repairing and cleaning the valve.

The claims relied upon are Nos. 1, 2, and 4.

Claim No. 1 is:

"1. A combined waste and overflow comprising a valve chamber having means for connection with a waste opening, a pipe leading from said chamber, an overflow connection operatively associated with said pipe, an elbow attached to the pipe, a valve movable in said chamber for closing the waste opening and means for permitting said valve to be moved through the pipe and withdrawn from said elbow."

Appellants in their brief announce that they have filed in this case a disclaimer in the following language:

"Your petitioner, therefore, hereby makes disclaimer of the subject matter of claim 1 except where the means permitting the withdrawal of the waste valve through the overflow pipe and elbow is limited to the proportioning of the valve, pipe and overflow elbow so as to permit such withdrawal and where a flexible connection with the valve constitutes part of such means."

Claim 2 differs from claim 1, thus limited, by the inclusion of the escutcheon 16 which is removably fitted against (or in opposition to) the open end of the elbow, and by the limitation that the mechanism for operating the valve is carried by the escutcheon.

Claim 4 is the most limited claim of the three and includes a flexible valve-actuating-connection leading to the valve and having a manipulating terminal exposed from the elbow.

Appellee admits that it is manufacturing and selling its device under license of United States patents, No. 1,049,328 and No. 1,593,-642, both issued to James Allingham, of the respective dates of January 7, 1913, and July 27, 1926. Allingham's later invention, which is called "Hydraulic and Automatic Waste Valve for Vessels," has as one of its main objects the provision of a waste valve, more particularly for bathtubs but not restricted thereto, which shall be of such construction, arrangement and combination of its parts as to conform to bathtubs known as the built-in type, in which the fixtures are concealed, and so as to comply with the law and regulations of the sanitary boards of many cities which require that traps or water seals in connection with the waste or drain pipes of bathtubs shall not be employed.

Another object of Allingham's latest invention is the provision of means whereby certain parts most likely to require cleaning, adjustment, and repairs may be readily removed and quickly replaced without interference with the closure for the fixtures. Another object is to furnish a waste valve for vessels that will act automatically at a given pressure of liquid, and which shall have manually operable means for discharging all or any desired amount of liquid from the vessel. Fig. 1 of appellee's device is shown below.

In Allingham's first patent, which antedates Bloch's, he used an hydraulic valve, but it was not spherical in form. It did not contain the chain by which the valve was lifted and lowered, neither was it operable from the overflow by attachment to an escutcheon, nor could the valve be removed through the overflow near the top of the tub, and as a whole it was not adapted for use in a built-in bathtub.

It is quite apparent that both devices accomplished the same results, and are operable in much the same manner. The distinctive differences in construction are to be found in the elbow which joins the overflow, the valve, and the means for lifting and lowering the valve. In Bloch's device the walls of the elbow are bulged sufficiently to permit the valve to pass through it; the valve is cylindrical and of such length as will, when seated, completely obstruct the waste from the bottom of the tub, which waste runs laterally into the valve chamber; the means for lifting and lowering the valve is a flexible wire

pivotally connected with the bail of the valve. In Allingham's device the elbow is of normal and standard design; the valve is not cylindrical but spherical, and when seated obstructs the waste which enters the valve chamber from the bottom; the means for lifting and lowering the valve is a chain. Both valves are operable from the overflow near the top of the tub by means of a handle attached to the escutcheon which covers the overflow; in one valve the handle is moved vertically, in the other horizontally. Allingham's valve is at all times subject to hydraulic pressure from the water in the tub, which has the effect of preventing the water in the tub from exceeding a certain height so long as the valve operates; and if for any reason the valve becomes sealed or the passageway obstructed, the overflow pipe near the top of the tub will operate in the same manner and by the same means as provided in appellants' device.

At the time Bloch's application was filed a combined waste and overflow and an escutcheon covering the overflow were old in the art. Allingham, 955,740; Wise, 917,395; Weaver, 861,489; Putnam, 434,402 and 563,-064; Craigie, 469,513; Harvey, 299,925; Foley, 267,863; Clark, 1,068,039; Hinsdale, 1,193,145; and Winzer (Swiss), 44,068. A flexible and pivotal operating means within and operated from the overflow, for the purpose of controlling the waste from the tub, was also old in the art. Winzer, 44,068; Craigie, 469,513.

We think the only new thing which Bloch presented to the art was the bulged elbow, and this was necessitated by his use of a cylindrical valve for the purpose of controlling a lateral flow of waste from the tub. Such a valve must necessarily be greater in length than the diameter of the pipe used, and greater in length than the diameter of a standard elbow for such sized pipe, otherwise it could never cover and control the waste. Hence the valve used could never pass through any elbow having the same diameter as the valve. In order to obviate this condition and to provide means for the removal of the valve for cleaning and repairs, Bloch enlarged the diameter of the elbow, in proportion to the length of the cylindrical valve, by bulging the walls of the elbow. This feature was new, and it may be conceded was a contribution to the art. Appellee, however, uses neither Bloch's valve nor elbow. The spherical valve which appellee uses is smaller in diameter than the diameter of the standard elbow, and of course readily passes through it. The size of appellee's valve is made possible by directing the waste through the bottom of the valve chamber rather than through its side.

The fact that Bloch devised means for removing a certain kind of valve through a specially constructed elbow, and the further fact that he was granted a patent for it, would give him no monopoly on the removal of all valves through all elbows. This principle was enunciated quite early in the case of O'Reilly et. al. v. Morse et al., 56 U. S. (15 How.) 61, 119, 14 L. Ed. 601.

It follows therefore that there is no infringement, and the decree of the District Court is affirmed.